**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Marlon Louis JOHNSON, et al., Defendants,**

**Timothy Duane Neal, Witness-Appellant.**

**Nos. 84–1148, 84–1178.**

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1984.

Decided June 11, 1984.

Federal Defender Office, Kenneth R. Sasse (argued), Detroit, Mich., for witness-appellant.

Leonard R. Gilman, U.S. Atty., Karen Reynolds (argued), Detroit, Mich., for U.S.

Before KENNEDY, JONES and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

█ Timothy Duane Neal appeals a judgment of civil contempt entered in the above-captioned case. During a pretrial hearing, Neal stated his intention to refuse to testify at the upcoming criminal trial of Marlon Louis Johnson and Bennie Johnson. The district court then held Neal in civil contempt. We have jurisdiction under 28 U.S.C. § 1291.[1] We reverse.

## I.

The facts underlying this appeal are relatively straightforward. On October 13, 1983, Neal was arrested for bank robbery. *See* 18 U.S.C. § 2113. A grand jury subsequently indicted Neal on this charge. The government and Neal then entered plea negotiations. It was agreed that Neal would cooperate with the government by pleading guilty and testifying against Marlon and Bennie Johnson, Neal's alleged partners in the bank robbery, both before a grand jury and at trial. The government agreed that Neal would receive no more than a seven-year sentence.

Neal initially abided with the agreement. He testified before a grand jury on November 17, 1983 and the Johnsons were thereafter indicted. On or about November 22, 1983, Neal was scheduled to enter his guilty plea. Neal, however, had by this time changed his mind. He indicated to the court that he would not plead guilty and intended to proceed to trial. On January 11, 1984, a jury returned a verdict of guilty

against Neal and he was subsequently sentenced to fifteen years imprisonment.

The trial of the Johnsons was originally scheduled to begin on January 4, 1984. After Neal refused to plead guilty and it became apparent that he was no longer cooperating, the government moved to adjourn the trial of the Johnsons. This motion was granted. On January 12, 1984, the government filed a "Motion to Compel the Testimony of Witness Timothy Duane Neal and to Hold such Witness in Civil Contempt upon his Refusing to Testify." Although Neal had not asserted the fifth amendment as a basis for his refusal to testify, the government also moved for a grant of immunity under 18 U.S.C. § 6003 in the event that Neal should later base his refusal on the privilege against self-incrimination. At a hearing on January 13, 1984, Neal announced to the court that he would not testify at the trial of the Johnsons. He indicated that his decision was based on threats made against him and his family. The hearing was continued to January 19, 1984. At this hearing, the court held that Neal had not established a valid justification for refusing to testify.[2] The district judge then had the following discussion with Neal.

> I'm going to ask you once more, despite everything you've told me here, last week and today, if you will testify as a witness for the government here, the court will grant you immunity from prosecution for anything else, other than the crime that you have already been convicted of. If you testify to anything, the government cannot use that testimony to

1. A judgment of civil contempt entered against a nonparty is appealable as a final judgment. *See New York Times Co. v. Jascalevich*, 439 U.S. 1317, 1319, 99 S.Ct. 6, 8, 58 L.Ed.2d 25 (1978) (White, J., in chambers); *Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940). The statement in *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir.1976), that a "judgment of civil contempt is not a final decree and therefore is not appealable," is correct as limited to the facts of that case. In *Blaylock*, a *party* sought review of a judgment of civil contempt. It was settled in this circuit long before *Blaylock* that a judgment of civil contempt against a party is normally not final

and appealable but that a judgment of civil contempt against a nonparty is final and appealable. *See In re Manufacturers Trading Corp.*, 194 F.2d 948, 955 (6th Cir.1952).

2. The district court found that Neal's testimony regarding threats was not credible. It also noted that even if proven, threats do not generally justify a refusal to testify. *See Piemonte v. United States*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1722 n. 2, 6 L.Ed.2d 1028 (1961) (dictum); *United States v. Patrick*, 542 F.2d 381, 388 (7th Cir.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

prosecute you for anything else, other than the case that you have already been prosecuted for, and that's over with. You have had a trial on that.

Now, I'm going to grant you immunity from prosecution of the nature that I have mentioned and I'll order you to testify in the Johnson trial. And if you refuse to testify, I will then be compelled to judge you in contempt of court.

Now, I will give you one more opportunity so that the government and the Court will know what to do about bringing the Johnson case on next Tuesday, or some time in the future. You may consult with your attorney if you care to. MR. NEAL: Well, I don't want to consult with him. The answer is still no, your Honor.
THE COURT: What's that?
MR. NEAL: The answer is still no.
THE COURT: Still no. You will not testify?
MR. NEAL: I will not testify.
THE COURT: Well, then I will adjudge you in contempt of court, and I will withhold fixing the penalty for that. I think that's all I can do today. I don't know.
MR. WILHELM: This is contempt under 28 USC 1826, your Honor, civil contempt?
THE COURT: Yes, civil contempt.
MR. WILHELM: Thank you, your Honor.
MS. REYNOLDS: Your honor, the Court may want to inform Mr. Neal that he can change his mind at any time by contacting the Court, and I will—
THE COURT: Yes. I think I should advise him that—no doubt his attorney will—if you change your mind Mr. Neal, at any time and decide that you will testify ... notify the court directly, or you can tell Mr. Wilhelm and he will get word to the Court and/or to the United States Attorney.

This oral judgment of contempt was later memorialized in written orders. After

holding Neal in contempt, the court granted the government's motion to adjourn the Johnsons' trial for an indefinite period of time, holding that Neal was an unavailable and essential witness under the Speedy Trial Act. See 18 U.S.C. § 3161(h)(3); *United States v. Marrero*, 705 F.2d 652 (2d Cir. 1983).[3]

The current posture of the case may be summarized as follows. Neal is incarcerated for an indefinite period of time on the civil contempt judgment, based upon his statement that he will in the future refuse to testify at a trial that has not yet begun. This current incarceration does not count as credit toward his bank robbery conviction. Marlon Johnson and Bennie Johnson are also incarcerated or are released on bail pending an indefinite trial date.

## II.

The issue we decide in this case is whether a district court has the authority to hold a person who will be called as a witness in civil contempt before the trial starts, before the witness is called to testify, and before any present refusal to testify is made because the witness states an intention not to testify in the future. Counsel for both parties have diligently searched for authorities on what we will call, for lack of a better term, "anticipatory contempt." Their efforts have been largely unsuccessful, as have ours. In short, we have found no case in which anticipatory contempt has been practiced or approved.

Lest anyone fail to grasp what is at stake, the alternative procedure should be noted. In what we would consider to be the normal procedure, the government would proceed to trial and call Neal as a witness. If Neal then refused to answer any questions, he could be adjudged in contempt and incarcerated until he agreed to testify or until the trial ended. The government finds this procedure less than satisfactory because jeopardy would, of

**3.** We of course express no view today on any Speedy Trial Act issues. Whether Neal is an essential witness under the Act and whether his disinclination to testify renders him "unavailable" are questions which no party presently before this court has standing to raise.

course, attach after the trial had begun. Thus, if Neal persisted in his recalcitrance, the Johnsons would be immune from further prosecution. The government contends that Neal is crucial to their case because he is the only witness who can identify the Johnsons. His testimony, the government argues, would be virtually the only direct evidence against them. Neal, on the other hand, argues that his importance is overestimated. The government, he argues, could use his grand jury testimony if he refuses to testify at trial. It was therefore improper, he argues, to hold him in contempt.

■ The government has the better of this aspect of the case. The district judge, who was in a position to know, opined that he would be inclined to grant a motion for acquittal if Neal did not testify at the trial. We, however, do not find the relative importance of Neal's testimony to be of any great significance. Whether the grand jury transcript would be admissible at the Johnsons' trial, *see generally United States v. Barlow*, 693 F.2d 954, 960–65 (6th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983), is a question not properly before us. Assuming, without deciding, that it would be admissible, Neal could not justify his refusal to testify on that basis. There is no rule of law that the government may subpoena only crucial witnesses. A witness cannot refuse to testify on the ground that other evidence would suffice.[4] Neal clearly has relevant and material testimony to offer against the Johnsons. The government thus has a right to demand his testimony.

The question is thus not whether Neal should be required to testify, but rather in what manner the district court may use its inherent power to coerce him to testify.

## III.

■ As is often true, we begin by analyzing a statute. 28 U.S.C. § 1826 provides:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as a witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) The court proceeding, or

(2) The term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

Under this statute there must be a "refusal" to "comply with an order of the court to testify." Moreover, this refusal must occur in a "proceeding before or ancillary to any court or grand jury." Thus, two problems are immediately apparent in the present case.[5] First, it is less than clear

---

**4.** *See Piemonte,* 367 U.S. at 559 n. 2, 81 S.Ct. at 1722 n. 2:

If two persons witness an offense—one being an innocent bystander and the other an accomplice who is thereafter imprisoned for his participation—the latter has no more right to keep silent than the former. The Government

of course has an obligation to protect its citizens from harm. But fear of reprisal offers an immunized prisoner no more dispensation from testifying than it does any innocent bystander without a record.

**5.** We are aware of the 30-day period within which appeals from these orders are to be decid-

that a statement of intent not to comply in the future with an order to testify is a "refusal." Second, it is not clear that the refusal occurred during a "proceeding."

The legislative history of § 1826 offers little illumination. The House Report states that the provision was "intended to codify present civil contempt practice." H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 4007, 4008. There is nothing in the legislative history to indicate whether Neal's statement of intent would constitute a "refusal." The House Report does, however, briefly comment on what types of proceedings are covered: "A proceeding 'ancillary to' would include a pretrial deposition hearing." *Id.* at 4022.

■ To the extent that anything can be drawn from the above, we conclude that the legislative history does not indicate that anticipatory contempt is appropriate. Congress' statement that the provision is to codify present practice indicates that no expansion of contempt powers was intended. This is significant in two ways. First, because we have found no cases imposing an anticipatory contempt judgment prior to (or after) the enactment of the statute, "present practice" did not include anticipatory contempt. Second, because our analysis of the law of civil contempt, to be discussed below, indicates that anticipatory contempt would not have been approved had it been practiced, this absence of anticipatory contempt judgments may not be attributed to a mere lack of ingenuity on the part of courts or litigants. Moreover, the statement that an "ancillary" proceeding includes a deposition indicates that proceedings dissimilar to depositions were probably not intended to be covered by this provision.

The legislative history is, however, far from dispositive of this problem. Our conclusion that anticipatory contempt is not appropriate under § 1826 rests primarily on the conclusion that it was inappropriate under the practice which was codified by that statute.

## IV.

One of the most fundamental principles of the law of contempt is that a court must exercise only the "least possible power adequate to the end proposed." *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); *In re Michael*, 326 U.S. 224, 227, 66 S.Ct. 78, 79, 90 L.Ed. 30 (1945); *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 230, 5 L.Ed. 242 (1821). In analyzing the validity of anticipatory contempt in light of this principle, two related but distinct inquiries are necessary. The first inquiry is whether anticipatory contempt involves a greater exercise of power than holding a witness in contempt only after a demand for, and refusal of, testimony. If anticipatory contempt is a great exercise of power, then a second inquiry, whether the normal procedure for contempt is "adequate to the end proposed," is necessary. If anticipatory contempt is a greater exercise of power than the normal procedure and if the latter is adequate to achieve the proper ends of a contempt judgment, then anticipatory contempt cannot be justified.

---

ed. The circuits are in general agreement that the passing of the 30-day period does not deprive an appellate court of jurisdiction. *See, e.g., Melickian v. United States*, 547 F.2d 416, 417–20 (8th Cir.), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977). The Tenth Circuit alone, albeit in dicta, has ruled that the 30-day period is mandatory and jurisdictional. *See In re Berry*, 521 F.2d 179, 181 (10th Cir.), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975).

The policy of the 30-day limitation is to protect a "meritorious contemnor from extended incarceration." *Melickian*, 547 F.2d at 419. Since Neal would be incarcerated in any event, and

since, if it is determined that he was erroneously held in contempt, the time he has served under the contempt judgment can be credited toward his bank robbery sentence, this policy is not offended by deciding this appeal after the 30-day period has expired. *Cf. In re Fula*, 672 F.2d 279, 282–83 (2d Cir.1982) (30-day period does not affect jurisdiction "during the period when a contemnor is not confined pursuant to the contempt order"). In light of the pending trial of the Johnsons, however, we have attempted to adjudicate this case as quickly as scheduling and the requirements of due deliberation permit.

Imposing coercive imprisonment upon the statement that testimony will not be given in the future is certainly a greater exercise of power than imposing a similar sanction upon an actual demand for, and refusal of, testimony. First, although the coercive impact may be equivalent in both procedures, the former rests not upon the inherent power of a court to enforce its lawful orders in proceedings which must necessarily be heard by it, but instead upon a special proceeding, apart from the trial, in which a potential witness is brought into court for the very purpose of determining if he will be found in contempt. The inquiry by the court as to whether the witness will testify at a future date is itself an exercise of power not normally used in contempt proceedings. Second, the natural limit upon a sanction for civil contempt, the duration of the trial, is removed because there is no ongoing trial.[6] *See* 28 U.S.C. § 1826(a).

Since anticipatory contempt involves a greater exercise of power, the question then is whether a citation for contempt upon an actual demand for, and refusal of, testimony at trial is "adequate to the end proposed." If it is, then anticipatory contempt, being a greater exercise of power, is inappropriate. We conclude that imposing contempt only at trial and after an actual refusal to testify is an adequate procedure.

First, it should be noted that Neal has already changed his mind once about testifying. Had Neal agreed to testify upon the threat of anticipatory contempt, there would have been no guarantee that he would not have changed his mind again when actually called to testify. The government would then be in the very position it fears: after jeopardy attaches to the Johnsons, their star witness refuses to testify. Thus, anticipatory contempt is not insurance that Neal will not refuse to testify after jeopardy attaches to the Johnsons. We also note that the procedure adopted below not only does not guarantee the government's primary purpose—obtaining Neal's testimony at trial—it also does no more than the usual procedure to advance the ultimate purpose—convicting the Johnsons. The government fears that if it waits until trial to obtain a contempt judgment against Neal, and Neal refuses to testify, it runs a serious risk of losing the case and being barred from further action by double jeopardy. Logic dictates, however, that this risk is not decreased by using anticipatory contempt. Even if the government obtains a pretrial order for Neal to testify and the court incarcerates Neal until he agrees that he will testify, whether or not Neal testifies depends solely on his own willpower and resolve. The government has made much of the importance of Neal's testimony. It cannot, it argues, make its case without the testimony. If this is true, then the government will be unable to prosecute the Johnsons regardless of any double jeopardy concerns. The government's real problem is not double jeopardy; it is Neal's recalcitrance. We do not perceive how holding Neal in contempt before an actual refusal to testify occurs is more likely to remove that recalcitrance than waiting until he actually disobeys a present order to testify.[7]

## V.

The result reached by the preceding analysis is supported by the limited amount of case law we have been able to locate on anticipatory contempt. Admittedly, the

---

**6.** Since the district court declared that Neal is an unavailable and essential witness, the Speedy Trial Act imposes no temporal limitation on his incarceration.

**7.** It should also be noted that if Neal refuses to testify at trial it is possible that criminal, as well as civil, contempt sanctions could be imposed. *See United States v. UMW,* 330 U.S. 258, 298–99, 67 S.Ct. 677, 698, 91 L.Ed. 884 (1947) (the same conduct can give rise to both civil and criminal contempt). Such a penalty, moreover, could be severe. *See United States v. Berardelli,* 565 F.2d

24, 31 (2d Cir.1977) (five-year sentence for criminal contempt for refusal to testify at trial not excessive); *United States v. Patrick,* 542 F.2d 381, 392–93 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977) (four-year sentence for criminal contempt for refusal to testify at trial not excessive); *United States v. Sternman,* 433 F.2d 913, 914 (6th Cir.1970) (per curiam) (three-year sentence for criminal contempt for refusal to testify before grand jury not excessive).

support is indirect or contained in dicta or both. It is, however, consistent with our analysis of the problem.

In *United States v. Bryan*, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950), the Supreme Court reviewed a conviction of criminal contempt of Congress [8] based on the refusal to produce documents required under a subpoena duces tecum. The defendant argued that there was no quorum of the committee when she appeared before it and, therefore, there was no properly constituted body toward which she could have been contemptuous. The Court rejected this argument [9] by holding that under the particular statute, 2 U.S.C. § 192, there was no requirement that the refusal to comply with a lawful subpoena occur before a "competent tribunal." *See* 339 U.S. at 329, 70 S.Ct. at 729. Because of this, the defendant's actions before the members of the committee that were present showed a violation of the operative terms of the statute: she refused to "produce papers on any matter under inquiry." *See id.* at 329–30, 70 S.Ct. at 729–30. What is important for present purposes is that the court found it crucial to this result that *"on the day set out in the subpoena* she intentionally failed to comply." *Id.* at 330, 70 S.Ct. at 730 (emphasis added). The Court indicated that a different result would have been necessary had the defendant merely stated an intention not to comply before the subpoena required her presence: "Of course a witness may always change his mind. *A default does not mature until the return date of the subpoena, whatever the previous manifestations of intent to default."* *Id.* (emphasis added). We have here the anticipatory contempt judgment not present in *Bryan* but to which the court spoke. We find its reasoning forceful.

We also find indirect support in *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), (overruling *Brown v. United States*, 359 U.S. 41, 79 S.Ct. 539, 3

L.Ed.2d 609 (1959)). *Harris* involved a conviction of criminal contempt for refusing to give grand jury testimony. The issue was whether the proper procedure was a summary finding of criminal contempt for a contempt committed in the presence of the court, under Federal Rule of Criminal Procedure 42(a), or the notice and hearing procedure of Rule 42(b), used where the contempt occurred out of the presence of the court. After Harris refused to testify before the grand jury, he was taken before the district court and ordered to testify. He then again failed to respond to the grand jury's questions. There was no doubt that this refusal, after an order and demand for compliance, constituted criminal contempt. Since it occurred out of the court's presence, however, the notice and hearing procedure of Rule 42(b) would have been necessary. Instead of using this procedure, the prosecutor again brought Harris before the district court, which proceeded to repeat the grand jury questions and demand answers. When Harris refused to answer the district court, the court found him in criminal contempt without notice and hearing, pursuant to Rule 42(a). The Supreme Court reversed:

> The real contempt, if such there was, was contempt before the grand jury—the refusal to answer to it when directed by the court. Swearing the witness and repeating the questions before the judge was an effort to have the refusal to testify "committed in the actual presence of the court" for the purposes of Rule 42(a). It served no other purpose, for the witness had been adamant and had made his position known. The appearance before the District Court was not a new and different proceeding, unrelated to the other. It was ancillary to the grand jury hearing and designed as an aid to it.

*See* 382 U.S. at 164–65, 86 S.Ct. at 354.

There is no doubt that Harris could have been held in civil contempt, or in indirect

---

**8.** The statute, 2 U.S.C. § 192, does not speak of contempt but its tenor and proscription render it closely analogous to a contempt statute.

**9.** The basis of the court's holding is unclear because the court, in addition to rejecting this argument on the merits, also ruled that the defendant had not raised this issue in a timely fashion.

criminal contempt under the procedures of Rule 42(b), when he refused to testify after being ordered to do so. The point to be taken from *Harris*, however, is that a contempt which occurs in one proceeding cannot, by manipulation, be transformed into a contempt occurring in another proceeding. In *Harris*, the contempt before the grand jury could not be manipulated so that it occurred in the court's presence; in the present case, the contempt which might occur at the Johnsons' trial cannot be manipulated so that it occurs in a separate proceeding held before the trial commences.

In conclusion, the procedure used below, anticipatory contempt, is improper under traditional notions of the law of contempt. It is an exercise of power more than "adequate to the end proposed." It also is inconsistent with related Supreme Court precedents. For these reasons, the judgment of the district court is REVERSED and REMANDED with instructions that Neal be given credit on his bank robbery sentence for the time he has been incarcerated under the civil contempt judgment.