**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Marlon Louis JOHNSON, and Bennie Johnson, Defendants,**

**Timothy Duane Neal, Witness-Appellant.**

No. 84–1488.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 24, 1984.

Decided Jan. 10, 1985.

Leroy T. Soles, Federal Defender Office, Kenneth R. Sasse (argued), Detroit, Mich., for witness-appellant.

Leonard R. Gilman, U.S. Atty., Karen Reynolds, Maura Corrigan (argued), Asst. U.S. Attys., Detroit, Mich., for plaintiff-appellee.

Before ENGEL, MERRITT and KENNEDY, Circuit Judges.

MERRITT, Circuit Judge.

This appeal marks the second time that Timothy Neal has come before this Court asking that pretrial civil contempt charges against him be set aside. The first appearance resulted in our reversing the trial court's contempt order, made at a pretrial hearing, since the order had not been made during the kind of "proceeding before or ancillary to any court" mandated by the Recalcitrant Witness Act, 28 U.S.C. § 1826.

*See United States v. Johnson,* 736 F.2d 358 (6th Cir.1984).

This appeal presents two issues, both of which we answer affirmatively: (1) whether the government correctly uses pretrial deposition proceedings under Fed.R. Crim.P. 15(a) as proceedings in which civil contempt sanctions for refusal to testify can be invoked against a witness who would be physically available but has refused to testify at trial, and (2) whether an immunized witness can be found in civil contempt during Rule 15 deposition proceedings when the witness' attorney states that his client refuses to testify and when the prosecutor never questions the witness directly. Accordingly, we affirm the trial court's order finding Neal in civil contempt under the Recalcitrant Witness Act, 28 U.S.C. § 1826.

As set out more fully in *United States v. Johnson, supra,* the facts are as follows. After being indicted for bank robbery, Neal entered into plea negotiations with the government; he agreed to plead guilty and to testify against his alleged partners in the robbery, Bennie Johnson and Marlon Johnson. Although Neal did testify at the grand jury proceeding leading to the indictment of the two men, he later refused to enter his plea and proceeded to trial instead. He was convicted of bank robbery and sentenced to fifteen years in prison.

Thereafter, at a pretrial hearing for the Johnsons' trial, during which he was granted immunity under 18 U.S.C. § 6003, Neal refused to testify against the two men. He cited fear for his own and his family's safety as reasons for the refusal. The trial court held him in civil contempt, he appealed to this Court, and the judgment was reversed. *See Johnson, supra.*

During oral argument before this Court in the first *Johnson* case, the Court inquired as to why the government had not tried to secure Neal's testimony through a pretrial deposition proceeding under Fed.R. Crim.P. 15. Rule 15, as amended in 1975, provides that pretrial depositions can be taken of witnesses, for later use at trial, provided that there exist "exceptional circumstances ... in the interests of justice."

On April 12, 1984, the government moved the trial court to order Neal's deposition under Rule 15. The trial court granted the government's motion for deposition under Rule 15 and signed an order under 18 U.S.C. § 6003, immunizing Neal for any admissions he might make that would be otherwise violative of his Fifth Amendment rights. On June 29, 1984, Neal and his attorney attended the deposition proceeding.[1] When asked by the government whether his client was willing to testify, Neal's attorney stated that he had apprised Neal of the various sanctions that could be applied against him and that Neal still refused to testify. The trial court then found Neal in civil contempt under the Recalcitrant Witness Act, and this appeal ensued.

## I.

■ We observe as a threshold matter that there is no question that a pretrial deposition proceeding is an appropriate proceeding for the purposes of invoking civil contempt powers under the Recalcitrant Witness Act, 28 U.S.C. § 1826. Legislative history of § 1826 reveals that pretrial depositions were cited as an example of the kind of proceedings considered "ancillary to" the court for purposes of § 1826. *See* H.R. Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. and Ad. News 4007, 4022, cited in *United States v. Johnson,* 736 F.2d 358 (6th Cir.1984).

## II.

■ Prior to the 1975 amendments, Fed. R.Crim.P. 15 allowed depositions only when

---

1. Also present were the government attorney, defendant Marlon Johnson and his attorney, and defendant Bennie Johnson. For this proceeding the government had obtained a compulsion order since, in a Rule 15 deposition proceeding attempted two weeks earlier, Neal had indicated through his attorney that he refused to testify both on Fifth Amendment grounds and because of fear for his safety. The first deposition proceeding was discontinued so that the trial judge could sign the immunity order on the basis of Neal's having invoked the Fifth Amendment.

the witness "may be unable to attend or prevented from attending trial ..." *See United States v. Puchi,* 441 F.2d 697, 701 (9th Cir.1971). *See also In Re United States,* 348 F.2d 624 (1st Cir.1965) (inability to attend trial is a prerequisite for Rule 15 depositions). The 1975 amendments, however, deleted the "unable to attend" requirement and expressed the Rule 15 standard as "[w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken." Fed.R. Crim.P. 15. The government correctly contends that the import of the 1975 amendment is that physical availability of the witness at trial no longer precludes a Rule 15 deposition.

The Advisory Committee Notes to the 1975 amendments do not explicitly address whether physical unavailability should remain a requirement under Rule 15. However, in discussing "exceptional circumstances" under subsection (a) of Rule 15 the Advisory Committee does refer to the relevance of the "presence or absence of factors which determine use of the deposition at the trial, such as ... the possible unavailability of the witness." Since unavailability for purposes of using the deposition at trial is defined to include a witness' refusal to testify,[2] the committee appears to refer to the very situation presented in this appeal in its discussion of exceptional circumstances.

In the only other circuit to deal with this issue directly, the 1975 amendment was construed to remove the "explicit requirement of unavailability." *United States v. Mann,* 590 F.2d 361, 366 n. 5 (1st Cir.1978). Although the amendment was not a major focus of the decision, the Court noted that one consequence of the amendment was to render useless prior case law that focused

on a witness' physical availability as a requirement for pretrial depositions. *Id.*

The defendant makes an argument for retaining the physical unavailability requirement based on the interrelationship between § 3503 of the Organized Crime Act of 1970, 18 U.S.C. § 3503, which provides for taking pretrial depositions in organized crime cases, and Rule 15. He points out that the "exceptional circumstances" language of amended Rule 15 tracks identical language in § 3503 of the Organized Crime Act of 1970, and notes that section 3503 was intended to be the equivalent of the then-existing regulations under Rule 15. *See United States v. Singleton,* 460 F.2d 1148, 1153–54 (2d Cir. 1972), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973). Defendant urges that by using identical language in the 1975 amendment, Congress could not have intended any major change in the requirements for a deposition.

Such an argument renders the 1975 amendment a nullity. If amended Rule 15, in tracking the "exceptional circumstances" language of § 3503, is to be interpreted consistently with the requirements embodied in § 3503, and if § 3503 was intended at its passage to be the equivalent of then-existing requirements under Rule 15, amending Rule 15 in 1975 was simply a circular exercise. Such an interpretation is neither logical nor necessary.

The better reasoned approach gives effect to the changed wording of the 1975 amendment by using physical unavailability as but one factor in determining whether "exceptional circumstances in the interests of justice" exist. *See* 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d, § 242 (1982). (unavailability is still an important factor but is no longer a requirement). Although other circuits have apparently assumed the continued vitality of the

---

**2.** Subsection (e) of Rule 15 prescribes the circumstances under which pretrial depositions may be used in trial; it provides, in part, that *depositions may be used* "*as substitute evidence if the witness is unavailable,* as unavailable is defined in Rule 804(a) of the Federal Rules of Evidence." Fed.R.Crim.P. 15(e). Unavailable

for purposes of Federal Rules of Evidence 804(a) includes the circumstance of a witness who "persists in refusing to testify concerning *the subject matter of his statement despite an* order of the court to do so." Fed.R.Evid. 804(a)(2).

physical unavailability requirement after the 1975 amendments, none of these decisions have turned on direct analyses of the effect of the 1975 amendment. *See Application of Eisenberg,* 654 F.2d 1107, 1113 n. 9 (5th Cir.1981) (containing one sentence in a footnote stating the general "unable to attend trial" standard); *United States v. Rich,* 580 F.2d 929, 934 (9th Cir.), *cert. denied,* 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978) (stating physical unavailability as required and citing a 1965 decision of the First Circuit, *In re United States,* 348 F.2d 624, 626 (1st Cir.1965)).

A mechanical application of the physical unavailability requirement is neither useful nor indicated by the language of amended Rule 15. We hold that the ability of the witness to be present at trial does not preclude taking depositions under Rule 15.

█ Analyzing this case in light of the "exceptional circumstances" standard of Rule 15 indicates that the trial court properly allowed the taking of Neal's deposition. The government argued persuasively that Neal's information was critical to its case; the trial court found that the government could not establish its case without Neal's identification testimony.

The government's dilemma at this point was based on jeopardy considerations. Without the deposition proceeding, the government would have been forced to proceed to trial against the Johnsons, at which point jeopardy would attach. If Neal then refused to testify on the stand, the government's case would probably fail producing either an acquittal or a mistrial. Without Neal's testimony, two men whom the government says Neal had earlier acknowledged as planning and performing an armed robbery could not effectively be brought to justice. Given the circumstances surrounding the case and the consequences of Neal's refusal, the "exceptional circumstances in the interests of justice" requirement of Rule 15 clearly has been met.

### III.

The second ground for appeal is that Neal himself was never asked a direct question by the prosecutor during the deposition proceedings. He argues on appeal that since he never actually refused to answer a direct question, holding him in civil contempt amounts to the anticipatory contempt proscribed in *United States v. Johnson, supra.*

This Court's analysis of anticipatory contempt in *Johnson I* hinged on two related factors. First, contempt was not invoked there in any proceeding deemed "ancillary to the court" for purposes of the Recalcitrant Witness Act. Second, Neal's refusal was a refusal to testify at some point in the future, rather than a present refusal to testify in the proceeding itself. We used the term "anticipatory contempt" as a shorthand way to describe the improper use of contempt powers in the context of those two interrelated factors.

█ The present case offers a markedly different context. A pretrial deposition hearing is manifestly ancillary to the court for purposes of the Recalcitrant Witness Act, and Neal's refusal was a present refusal to testify at the proceeding itself. For these reasons, the use of contempt powers in this proceeding simply does not conform to our definition of anticipatory contempt.

█ That Neal himself did not voice any response to the government's question does not affect the outcome. Ordinarily, agency doctrine is applied in determining whether a party will be held to the statements of his or her attorney. *See* 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE, ¶ 801(d)(2)(C)[01] at 210–11 (1984). There is nothing in the record to indicate that Neal's attorney was acting beyond the scope of his authority as agent for Neal. He had represented Neal during prior proceedings; Neal was present at the hearing and indicated no disapproval of his lawyer's statements. Statements of an attorney that are directly related to the litigation at hand have been held to be within the attorney's scope of authority and binding on the

client.[3] *See, e.g., United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir.1969) (statements made by attorney to the IRS in regard to tax evasion investigation of his client were admissions binding on the client).

█ Finally, Neal suggests that the government's use of deposition proceedings in this context was manipulative and therefore somehow improper. This argument falls of its own weight. Civil contempt proceedings are inherently manipulative, in that the purpose of the process is to change behavior. *See, e.g., Simkin v. United States*, 715 F.2d 34 (2nd Cir.1983). The court imposes a sanction literally to compel the party to conform to some standard of behavior, whether it be giving relevant testimony, producing documents, or adjusting one's courtroom behavior.

Labelling behavior as manipulative or non-manipulative is not relevant to the proper inquiry regarding contempt processes. The proper inquiry is whether, as we reiterated in *Johnson I*, the court has used the " 'least possible power adequate to the end proposed.' " *Johnson*, 736 F.2d at 362, quoting *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966). In *Johnson I*, we analyzed that standard by examining the context in which contempt powers were invoked. Because of the nature of both the proceeding itself and Neal's refusal, we found that the court had exceeded the boundaries of permissible power.

Accordingly, the judgment of the District Court is affirmed.

ENGEL, Circuit Judge, concurring.

I concur fully in parts I and II, and I agree with the result reached in part III, although I am far from satisfied that the trial court's procedure following our remand was fully curative of the defect noted in our earlier opinion, *United States v. Johnson*, 736 F.2d 358 (6th Cir.1984).[1]

The purpose of proceedings under Federal Rule of Criminal Procedure 15 should be to obtain and preserve the testimony of a witness where the circumstances contemplated by the rule are present. The purpose is not to enforce silence or to punish it. Unfortunately, the procedure used here was directed more toward one of the latter ends rather than the former.

The potential for mischief in departing from the general rule that the exercise of the Fifth Amendment privilege against self-incrimination is personal to the witness is demonstrated in a bizarre but effective way in *United States v. Mayes*, 512 F.2d 637, 648–51 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). While obviously different on the

---

**3.** There may be a useful analogy here to the role of an attorney in asserting a Fifth Amendment privilege on behalf of the client. Although that privilege is personal to the client, *see United States v. Mayes*, 512 F.2d 637, 649 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975), it can be invoked on the client's behalf by the attorney. *Id.*

**1.** In the hearing on remand, Neal was never questioned concerning his knowledge of the crime. Instead, the finding of civil contempt came after the following colloquy between the trial judge and Neal:

THE COURT: ... Mr. Neal, I would like to know from you, are you going to testify or not?
MR. NEAL: No, I am not, your Honor.
THE COURT: You say you are not?
MR. NEAL: Yes.
THE COURT: You will not testify?
MR. NEAL: No I won't.

THE COURT: I'm talking about that is in connection with the deposition today. That's what I mean by testifying. I'm not talking about the trial that may come up in the future. I'm talking about the taking of your deposition. Are you refusing to give testimony on the deposition?
MR. NEAL: Yes I am, your Honor.
THE COURT: What is your answer?
MR. NEAL: Yes, I am.
THE COURT: I see. For what reason?
MR. NEAL: Fear for my life.
THE COURT: What do you base that on? Transcript of Motion Proceeding on June 29, 1984 at 18–19. At that point Neal's attorney interjected that Neal had previously stated his reasons for refusing to testify and that any further answers could be used against him in other proceedings. *Id.* at 19.

Curiously, therefore, with the possible exception of the last question, Neal responded to every question put to him.

facts, *Mayes* does show the extent to which a witness can be induced to refuse to testify where it is not in someone's interest that he or she do so. Here, of course, there was no Fifth Amendment privilege to be exercised, either by Neal or by his attorney on Neal's behalf, for Neal had already been accorded immunity. The only basis for Neal's refusal was fright—fear for his life if he testified. That this is not a legal basis for refusal is clear from our affirmance of the order holding Neal in contempt.

I entertain serious doubts whether Neal's counsel had the legal right to interpose on his client's behalf such an objection to testifying, because it was not a valid objection and he knew it. I always understood that an attorney had an obligation to advance before the court only those positions which he honestly believed were debatable under the law. This position was not honestly debatable. Neal had a right here, but that right was to receive the protection of the law, not to be silent.[2] I am not saying that Neal was not entitled to have the advice of counsel, even if that advice might be only to point out to him the alternatives he faced. I do say, however, that he had the legal obligation to answer questions put to him. In addition, jail for contempt was not an alternative right available to Neal any more than a driver has a "right" to violate a traffic law by paying the prescribed fine in advance.

In short, I think the government prosecutor should have proceeded to interrogate Neal on those matters concerning which it claimed his testimony was sought. It is entirely possible that if questioning had been carefully constructed to produce answers and not a charge of contempt, it could have allayed Neal's fears or at least so piqued his curiosity that he would have responded notwithstanding his earlier and contrary resolve not to testify. As the undersigned observed in *Mayes*, 512 F.2d at 649:

> We recognize that it is not possible always to know in advance if the privilege will in fact be invoked when a given question is asked, and further whether, if invoked, the question is properly subject to the privilege. Since the government has the obligation to present such relevant testimony as the witness may possess, it must in turn have a reasonable opportunity to test whether that testimony will be forthcoming, and if not, whether it can be compelled. Nor do we go so far as to hold that in testing the privilege the government must do so out of the presence of the jury. Experience shows that apprehended difficulties with proof often evaporate when put to the actual test of the trial. There may be a constitutional privilege against testifying and at the same time be a powerful incentive to get on the stand and tell the truth. The alternatives for the witness are seldom easy.

The same might be observed with respect to Neal's dilemma here. However, because Neal was in fact directly questioned by the judge and personally indicated his refusal, I am satisfied that there was sufficient compliance with our earlier remand to warrant an affirmation of the judgment of civil contempt.

---

**2.** The federal government has taken elaborate steps to protect victims and witnesses from intimidation. *See* 18 U.S.C. §§ 1510–15. Specifically, section 6 of Pub.L. No. 97–291, 96 Stat. 1250 (1982), requires the Attorney General to develop and implement guidelines for the treatment of witnesses in criminal proceedings. Under those guidelines witnesses must receive information concerning the measures the government can take to protect them, be notified of changes in their scheduled testimony and the status of the case, and if they so request, be given assistance from the government in explaining to their creditors or employers financial strain or necessary absence from employment caused by their cooperation with the law enforcement agencies. *Id.* These measures require the government to do what it can to protect witnesses from the possible intimidation or harassment they may suffer because they testify.