**UNITED STATES of America**

v.

**Ana Lenor FEIJOO–TOMALA, Defendant.**

**No. 89 CR 795.**

United States District Court, E.D. New York.

Nov. 16, 1990.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. for U.S.; Miriam Best, Asst. U.S. Atty., of counsel.

Robert M. Baum, Federal Defender Services Unit, Legal Aid Soc., Brooklyn, N.Y., for defendant; Douglas G. Morris, of counsel.

## MEMORANDUM and ORDER

BARTELS, District Judge.

### Background

The defendant Ana Lenor Feijoo–Tomala ("Feijoo") is awaiting a retrial in connection with a one-count indictment which charges her with knowingly and intentionally importing into the United States more than 500 grams of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(2)(B)(ii). Feijoo's first trial ended in a mistrial on June 8, 1990, due to the jury's inability to reach a unanimous verdict.[1]

This case began more than one year ago, on October 26, 1989, the day Feijoo, accompanied by her two daughters, returned to the United States from a one month sojourn in Ecuador, her homeland. Feijoo was arrested that evening after United States Customs Agents discovered cocaine secreted in a false bottom of a hard-sided suitcase she had in her possession. In addition to the hard-sided suitcase, which was distinctively marked with three strips of silver masking tape that had the words "New York" and her name printed on them, she also had three soft-sided suitcases with her. The soft-sided suitcases contained no contraband and were not seized as evidence in this case.

At her first trial Feijoo called three witnesses; her husband, Eduardo Granda ("Granda") (who had not accompanied the defendant on her trip to Ecuador, but was at the airport on the evening of the 26th to

---

1. Her motion to dismiss the indictment on the ground that the double jeopardy clause barred her reprosecution was denied by this Court.

*See* Memorandum and Order dated September 25, 1990.

meet her flight), her eldest daughter, Dilcia ("Dilcia"), and Feijoo herself took the stand. Granda, Dilcia and Feijoo are expected to testify at the second trial as well.[2]

The only issue in the case was, and continues to be, whether or not Feijoo knew there was cocaine in the suitcase. Feijoo claims that she was unaware that the hard-sided suitcase contained cocaine, or any form of contraband. In essence, her defense was that in the course of doing a favor for a stranger who unexpectedly approached her at the airport in Ecuador, she was unwittingly duped into bringing the cocaine into the United States.

At her first trial Feijoo tried to establish that it was not uncommon for people who were traveling between Ecuador and the United States to do favors for one another by carrying packages to and from relatives and friends. She testified that people had done similar favors for her, and that she had done like favors for others. Specifically, Feijoo told the jury that in the spring of 1989 her neighbor, Mercedes Moran ("Moran"), brought a package to her relatives in Ecuador, and that on this trip she did Moran a favor by taking a package to Moran's sister, Estrella. Feijoo also testified that on this trip she was doing a favor for Sarah, a girlfriend, who met Feijoo at the airport at the last moment and asked Feijoo to take a letter and some medicine back to her son in the United States. (The relevancy of this testimony is questioned.)

As background to the events that took place at the airport Feijoo testified that two days after she arrived in Ecuador she told Estrella (Moran's sister) that she would be returning home in about one month's time. She also testified that another woman, who identified herself as a friend or relative of Moran's, telephoned shortly before she left Ecuador and she told this person that she was leaving near the end of the month.

(The relevancy of this testimony is also questioned.)

Feijoo and Dilcia both testified that while they were waiting to check their luggage at the airport in Ecuador a stranger approached Feijoo and called her by name. Feijoo then testified that the woman, whose name she later learned was Maria Alcivar ("Alcivar"), identified herself as a relative of Moran's. Alcivar then asked Feijoo if she would do her a favor and take the hard-sided suitcase and an envelope containing two letters back to the United States. Alcivar told Feijoo that the suitcase and one letter were intended for her sister Georgina, who she said lived in New Jersey, and the other letter was for Moran.[3] Feijoo further testified that Alcivar opened the suitcase and showed her the contents, ladies and girls clothing, and told Feijoo that she was returning these garments to her sister because she had been unable to sell them in Ecuador. Feijoo testified that she opened the suitcase a second time to make sure that there was no food inside and when she found none she applied three strips of silver colored tape, which she had in her handbag, to the suitcase and wrote her name and destination on the tape.

### The Pending Motion

The defendant has made a motion pursuant to Rule 15(a) of the Fed.R.Cr.P. to depose three individuals, who happen to be her nieces, who are citizens and residents of Ecuador. The defendant maintains that her nieces can provide exculpatory testimony with respect to two factual matters which did not arise at her first trial, but which might arise at her retrial. The first matter concerns the appearance and condition of the soft-sided suitcases which Feijoo had in her possession when she returned from Ecuador. The second matter concerns telephone conversations Feijoo's nieces had with certain individuals, both before

---

2. The Court makes this statement based on two facts. First, the Court has issued an order pursuant to Rule 17(b) of the Fed.R.Cr.P. subpoenaing Granda and Dilcia. Second, the defendant has made an *in limine* motion wherein she indicates that she and Granda plan to testify.

3. Alcivar also gave Feijoo a scrap of paper with a name and a New Jersey address written on it. However, during the course of the investigation of this case the agents were never able to locate such a person or address.

and after Feijoo left Ecuador, regarding her return trip to New York.

### DISCUSSION

Rule 15(a) reads in relevant part:

Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may ... order that testimony of such witness be taken by deposition....

■ The burden is upon the moving party to demonstrate the existence of "exceptional circumstances," and the use of depositions is restricted to cases in which it is necessary to prevent a failure of justice. *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir.), *cert. denied* 486 U.S. 1026, 108 S.Ct. 2003, 100 L.Ed.2d 234 (1988) (citations omitted). Furthermore, the decision to grant, or deny, a motion under Rule 15(a) is left to the sound discretion of the Court. *See* Note of Advisory Committee to Rule 15.

■ Both the materiality of the testimony and the unavailability of the witnesses are crucial factors for the court's consideration. *United States v. Ismaili*, 828 F.2d 153, 159 (3rd Cir.1987), *cert. denied* 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988) (*citing, United States v. Johnson*, 752 F.2d 206, 209 (6th Cir.1976); *United States v. Bello*, 532 F.2d 422, 423 (5th Cir.1976); *see also* Notes of the Committee on the Judiciary, House Report No. 94–247 A. Moreover, a court does not abuse its discretion where it denies a motion under Rule 15(a) because "the evidence [is] in some respects irrelevant and in others cumulative and possibly inadmissable as hearsay." *See United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1569–1570 (9th Cir.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990). Finally, the Court notes that foreign deposition testimony, such as the defendant desires to take of her nieces in Ecuador, is suspect because it lacks the sanction of perjury. *See Alvarez*, 837 F.2d at 1029.

At the outset the Court wishes to acknowledge that the nieces are indeed unavailable to testify. Also, the Government does not dispute the fact that Feijoo is unable to bear the expense associated with bringing her nieces to this country to testify on her behalf.[4]

### A. The Soft–Sided Suitcases

■ During their deliberations the jury sent a note to the court inquiring whether there was silver tape, like that found on the hard-sided suitcase which contained the cocaine, on the soft-sided suitcases as well. The Court was unable to answer the question and instructed the jurors that there had been no evidence on that point. The defendant alleges that each one of her nieces can offer exculpatory evidence in that they will testify that there was tape on the soft-sided suitcases as well.

Whether or not a second jury will be curious about the condition of the soft-sided suitcases is debatable. However, even if the second jury should be so inclined the Court finds that: (1) the nieces' testimony on that point would be cumulative; and (2) the condition of the soft-sided suitcases is irrelevant to the real issue in the case, to wit: the state of the defendant's knowledge with respect to the contents of the hard-sided suitcase.

The defendant argues that her nieces' testimony is not cumulative because "[e]ven if Ms. Feijoo were to give similar testimony, [their] testimony ... would provide independent confirmation of events and [ ] jurors may be more likely to believe testimony of the nieces [rather] than the defendant."[5] Ms. Feijoo however is not the only individual who can testify with respect to the condition of the soft-sided suitcases. Dilcia and Granda can both testify, from first-hand knowledge, as to the

---

**4.** The Court previously denied the defendant's *ex parte* motion pursuant to Rule 17(b) of the Fed.R.Cr.P. to subpoena these witnesses at government expense. *See* Memorandum and Order dated October 15, 1990.

**5.** Morris Aff. at ¶ 10.

44

presence or absence of tape on the soft-sided suitcases. Dilcia because she saw them at the airport in Ecuador, and Granda because the customs agents gave them to him on the night of the 26th. Additional testimony by the defendant's nieces is clearly cumulative.

Testimony, regardless of whether it is by Feijoo, Granda, Dilcia or Feijoo's nieces, concerning the presence or absence of tape on the soft-sided suitcases is irrelevant. This testimony has no bearing on the defendant's state of knowledge with respect to the contents of the hard-sided suitcase, the real issue in this case.

Inasmuch as the Court concludes that the question of whether or not there was tape on the soft-sided suitcase is irrelevant and, even if it were relevant, that the nieces' testimony on this point would be cumulative, the defendant has not met her burden of proof and therefore may not depose her nieces with respect to this issue.

### B. The Telephone Conversations

■ Feijoo claims that her nieces will testify that shortly before she left Ecuador they each spoke over the phone with someone (either Estrella or another woman) who wanted to know when their aunt was returning home. One of the nieces will also testify that one of the callers asked if Feijoo would carry a suitcase back to the United States. Lastly, the nieces will testify that they received two phone calls after Feijoo left from individuals wanting to know how their aunt's trip to the United States was. The defendant alleges that this testimony is relevant because it corroborates her testimony that she was simply doing an innocent favor for someone.

Assuming, *arguendo*, that there is no hearsay problem with respect to the nieces' testimony [6], the Court finds that the defendant has not demonstrated the prerequisite exceptional circumstances to warrant taking their depositions. The nieces' testimony does not corroborate the defendant's story that she was merely a dupe who had

been deceived by Alcivar. Simply because the nieces can testify that some unknown person or persons apparently made vague and innocuous inquiries regarding Feijoo's return trip to the United States, both before and after she left Ecuador, does not corroborate Feijoo's story that she believed she was doing Alcivar an innocent favor. Whether or not Feijoo was bringing the hard-sided suitcase back to the United States as a favor for Alcivar, or anyone else, is really irrelevant. The Court wishes to emphasize that this trial is not about whether Feijoo did favors for Alcivar or anyone else. Feijoo might very well have been doing a favor for Alcivar. That, however, does not *ipso facto* mean that she did not know what was in the hard-sided suitcase. The nieces' testimony does not even remotely address the ultimate question in this case, which is, Feijoo's knowledge of the contents of the hard-sided suitcase. Accordingly, the absence of such testimony would not result in an injustice.

The defendant further argues that the nieces' testimony should be admitted as evidence of her state of mind. In support of her argument the defendant relies on *United States v. Detrich*, 865 F.2d 17 (2d Cir.1988). Detrich was arrested after agents found heroin hidden in the shoulderpads of a wedding suit he had in his luggage. Detrich's defense, like Feijoo's, was that he had been duped into carrying the suit containing the heroin. Detrich testified that while he was in India a friend approached him and asked him to bring the wedding suit back to New York and give it to a person named Dawood (the friend's brother) who was getting married. Detrich sought, unsuccessfully, to introduce Dawood's statement, made to a DEA agent in New York after Dawood was independently arrested, in which he said that he was getting married soon. The Court of Appeals held that the statement, which was offered to show Detrich's state of mind, and not for the truth of its assertion, should have been introduced because it

---

6. The defendant acknowledges in her brief that there is a legitimate question as to whether or not the nieces' testimony is hearsay.

"could be used to establish that Detrich had previously been told about Dawood's purported betrothal and that he thought he was doing [his friend] an innocent favor. That would ... corroborate Detrich's testimony that while in India, [a friend] had told him that Dawood was getting married. Thus [Detrich's] credibility would have been enhanced [on a crucial issue]." *Detrich*, 865 F.2d at 21.

*Detrich* is distinguished from the instant case with respect to a crucial element—the nieces' testimony does not corroborate Feijoo's testimony as to her state of mind. Detrich testified that he had been told that the suit was intended to be worn by Dawood at his wedding, and Dawood subsequently told DEA agents that he was getting married soon. Dawood's statement clearly bolsters Detrich's testimony. On the other hand, Feijoo testified that Alcivar asked her to take the suitcase containing ladies clothing back to someone named Georgina because she, Alcivar, had been unable to sell the clothing in Ecuador. In order to corroborate Feijoo's testimony, and bolster her credibility, the nieces' testimony would have to deal with either the contents of the suitcase Feijoo was being asked to bring back to the United States and/or the reason the suitcase was being sent to the United States. There has been no proffer by the defendant that her nieces can, or will, so testify. The defendant does not claim that the caller ever discussed the contents of the suitcase with her niece, nor does she claim that the caller ever told her niece why she was sending a suitcase back to the United States. Clearly, the rationale used by the court in *Detrich* to admit Dawood's out of court statement is not applicable in this case.

Finally, the defendant urges the court to adopt a lower threshold for assessing the materiality of her nieces' testimony. No rule of evidence justifies such a change. But, even if a lowered materiality threshold is appropriate in a criminal case, a court does not abuse its discretion where it denies permission to depose foreign witnesses because it finds that the testimony of those witnesses could not negate the crux of the government's indictment. *Ismaili*, 828

F.2d at 161–62. The nieces' testimony falls short of this benchmark. Accordingly, even if the Court adopted a less strict standard to determine materiality, its decision to exclude the nieces' testimony would not be an abuse of discretion.

Since the Court concludes that testimony by Feijoo's nieces concerning telephone conversations they had with unidentified individuals, both prior to and after Feijoo's departure, is not material, and its absence would not result in an injustice, the defendant has not met her burden of proof. Accordingly, she may not depose her nieces with respect to this issue either.

### CONCLUSION

For the aforementioned reasons Defendant's motion to take the deposition of three individuals in Ecuador, pursuant to Rule 15(a) of the Fed.R.Cr.P. is DENIED in its entirety.

SO ORDERED.