**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marcelino Efrain ALVAREZ, Jose Delgado Ramirez, Juan Ramon Mosquero–Herrera, Juan Ramon Gomez, Defendants–Appellants.**

**No. 86–5911.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 19, 1988.

Michael G. Smith, Coral Gables, Fla., for Marcelino Alvarez.

Paul M. Korchin, Coral Gables, Fla., for Jose Ramirez.

Carlos A. Rodriguez, Miami, Fla., for Juan Mosquera–Herrera.

Dave Lee Brannon, Henry M. Bugay, Asst. Federal Public Defenders, Miami, Fla., for Juan Gomez.

Leon B. Kellner, U.S. Atty., Lee E. Stapleton, David O. Leiwant, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for U.S.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HODGES*, Chief District Judge.

HATCHETT, Circuit Judge:

In this seizure-of-contraband-on-the-high-seas case, we affirm the judgments in the face of attacks that the trial was defective because the evidence was insufficient to support the convictions, a deliberate ignorance instruction should not have been given, the taking of a foreign deposition should have been allowed, the prosecutor engaged in misconduct, and expert testimony should not have been introduced.

In the southeast Bahamas, United States Coast Guard officers intercepted the "Proud Mary", a sixty-five foot fishing vessel sailing low in the water. A Coast Guard boarding party found the vessel's fishing nets dry and cracking and two trawl doors chained down and not prepared for fishing. The pilot house contained expensive satellite navigation equipment and a navigation chart which looked as though it had been used often for charting the area between the Quehara Peninsula in Colombia and the island of Aruba. Discovered elsewhere aboard the vessel were a welding machine, an electric sander, used putty knives, and Bondo (a filler for metal).

The vessel's hold contained 6,000 pounds of fish which were smelly, rotten, bleached white from age, with sunken eyes. The vessel had no refrigeration system, and the small amount of ice on the fish was melting. The fish appeared to have been unprofessionally loaded and in such a manner as to allow for easy access to the bulkhead area behind the fish bins.

The four appellants, Juan Ramon Gomez, Jose Delgado Ramirez, Juan Ramon Mosquero–Herrera and Marcelino Efrain Alvarez, were the only persons aboard the vessel. Gomez identified himself as the master of the vessel and told the Coast Guard officers he was transporting the fish from Aruba to Miami by way of Nassau, Bahamas. The bill of lading, however, indicated the destination as Nassau, listed no consignee of the fish, and indicated Seamar, an Aruban agency, had loaded the fish.

After five hours of searching and measuring, the Coast Guard officers determined that no access could be gained to a compartment measuring 8–by–20–by–6 feet located behind the fish hold. Gomez said he did not know what was in the compartment, but suggested it might be a large water tank. When a Coast Guard lieutenant informed Gomez that he intended to drill into the compartment, Gomez called the lieutenant "a liar for not believing ... that it was a water tank." Drilling into the tank produced a white powder, the odor of marijuana, and no water. The Coast Guard officers then requested a cutting torch from their vessel. Upon learning of the

* Honorable William Terrell Hodges, Chief U.S. District Judge for the Middle District of Florida, sitting by designation.

request for a torch, each appellant began packing a bag with clothing. A hole cut through the deck revealed 6,400 pounds of marijuana and 159 pounds of cocaine inside the secret compartment.

The Coast Guard officers then arrested the appellants. They found United States currency in the appellants' possession in the following amounts: Mosquero–Herrera $2,381; Alvarez $1,800; Ramirez $100; Gomez a couple of dollars. After receiving *Miranda* warnings, each appellant gave a statement.

Gomez stated that he had been hired by a man named Miguel to be the master of the vessel, even though Gomez had no prior nautical experience. Gomez also stated that he would be paid $2,000 to transport the vessel to Nassau and to turn the cargo over to a man named Frank. Gomez said Mosquero–Herrera was second in command on the vessel, and that he did not know any of the other crew members prior to the voyage.

Alvarez stated that Seamar Agency had hired him as an engineer to be paid $1,600 per month for the trip from Aruba to Miami and return. Alvarez claimed, however, that he had never sailed on a boat before.

Ramirez stated that he had made previous trips from Aruba to Miami on the Proud Mary. For this trip, a man named Miguel provided him (Ramirez) with money to fly from the United States to Aruba for the voyage. His duties included those of cook and deck hand.

Mosquero–Herrera stated that he had been hired by Miguel as a deck hand, and he would be paid $2,000 for the voyage. He further stated a man named Frank would meet the vessel in Nassau. At trial, Mosquero–Herrera testified that it was merely a coincidence that he and Gomez had flown on the same airplane from Santo Domingo to Aruba.

A four-count indictment charged each of the appellants with conspiracy to possess with intent to distribute marijuana and cocaine, and possession with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. §§ 955a(a) and 955c, and 18 U.S.C. § 2. A jury returned verdicts of guilty against each of the appellants on all counts.

Appellants contend (1) the evidence was insufficient to convict them; (2) the district court improperly gave a conscious ignorance instruction; (3) the district court improperly denied appellants' motion to take a foreign deposition; (4) the prosecutor made improper remarks during closing argument; and (5) a Drug Enforcement Agency's employee's expert testimony violated Rules 403 and 704(b) of the Federal Rules of Evidence.

### Sufficiency of Evidence

Alvarez and Gomez challenge the sufficiency of the evidence to support their convictions for a conspiracy to possess, and actual possession of, marijuana and cocaine, with intent to distribute, in violation of 21 U.S.C. §§ 955a(a) and 955c and 18 U.S.C. § 2.

To support a conviction for a conspiracy, the government must prove that two or more persons agreed to commit a crime, that the defendant knew of the agreement, and voluntarily became a part of the conspiracy. *United States v. Alvarez*, 755 F.2d 830, 853 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). Proof of acts committed in furtherance of the conspiracy may be sufficient to show knowing participation in the conspiracy. *United States v. Bain*, 736 F.2d 1480, 1485 (11th Cir.), *cert. denied*, 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed. 2d 275 (1984).

Proof of possession of drugs with intent to distribute requires the government to show the defendant knowingly possessed the drugs either actually or constructively, and that he intended to distribute them. *United States v. Cruz–Valdez*, 773 F.2d 1541, 1544 (11th Cir.1985) (in banc), *cert. denied*, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986). Evidence of surrounding circumstances can prove knowledge. *United States v. Vera*, 701 F.2d 1349, 1358–59 (11th Cir.1983). Constructive possession may be shown by proof of the knowing exercise of dominion

and control over the drugs. *United States v. Knight,* 705 F.2d 432, 433 (11th Cir. 1983).

This court has identified several factors as evidence of knowing possession of and conspiracy to possess drugs. These factors include the size of the vessel and quantity of drugs on board; suspicious behavior of the crew; absence of equipment or supplies necessary to the intended use of the vessel; and other factors. There is no set formula. *Cruz–Valdez,* 773 F.2d at 1546; *United States v. Vidal–Hungria,* 794 F.2d 1503, 1515 (11th Cir.1986).

■ In reviewing the sufficiency of the evidence, we first draw all reasonable inferences in favor of the jury's verdict and then consider whether a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Cole,* 755 F.2d 748, 755 (11th Cir.1985); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (in banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ The vessel "Proud Mary" was only 65 feet long and contained over 3 tons of marijuana and over 150 pounds of cocaine. Although the drugs were in a sealed, secret compartment, each of the appellants began packing a bag after the Coast Guard officers drilled into the secret compartment, but before the appellants were told drugs had been discovered. This indicates shared guilty knowledge.

The jury could properly have concluded that Gomez and Ramirez knew the 6,000 pounds of fish was a bogus cargo. The fish was three to four weeks old, bleached white from age, rotting, and smelly. The ice on the fish was melting, and the vessel was not equipped with refrigeration. Other evidence showed the vessel rode low in the water despite the fact the hold was only partially filled with fish. The Coast Guard officers also found welding equipment, an electric sander, used putty knives, and metal filler on board. All of these tools are useful in building—not as useful in fishing or transporting fish.

Furthermore, shortly after his arrest, Gomez told the Coast Guard officers that he did not know any of the other crew members. It was later determined, and presented to the jury, that Gomez had arrived in Aruba on the same airplane as Mosquero–Herrera. The jury may also have found it suspicious that Alvarez claimed he had never sailed on a boat before, yet claimed to have been hired as an engineer for this voyage.

Appellants also argue that the evidence was insufficient to convict under the holding in *United States v. Vidal–Hungria,* 794 F.2d 1503 (11th Cir.1986). In that case, the only evidence against the defendant was his status as a crew member aboard a vessel carrying a large quantity of drugs in a secret compartment. The evidence presented in this case goes far beyond mere presence and provided the jury with a sufficient basis upon which to find the appellants guilty beyond a reasonable doubt. *See United States v. Colindres–Davila,* 804 F.2d 623 (11th Cir.1986).

### Deliberate Ignorance Instruction

■ Ramirez challenges the district court's giving of the deliberate ignorance instruction. The instruction is appropriate where the evidence points in the direction of deliberate ignorance. *United States v. Aleman,* 728 F.2d 492, 494 (11th Cir.1984). Ramirez told the Coast Guard officers that he had been hired by a man named Frank for previous voyages on the Proud Mary and had been recommended to a man named Miguel for this voyage. He did not know either Frank's or Miguel's last name. He also told the Coast Guard officers that Miguel had provided him with money to fly from the United States to Aruba for the purpose of acting as cook and deck hand on this voyage. Being flown from the United States to Aruba and offered $1,500 to carry a load of rotten fish to Nassau by a man whose last name is unknown points in the direction of deliberate ignorance and warrants such an instruction. *United States v. Aleman,* 728 F.2d 492, 494 (11th Cir. 1984); *United States v. Batencort,* 592 F.2d 916, 918 (5th Cir.1979).

## Foreign Deposition

Alvarez contends that the district court abused its discretion in denying his motion to take the deposition of Mr. Johanes in Aruba, the person who hired Alvarez on behalf of the Seamar Agency.

█ Since deposition testimony is not subject to cross-examination to the same extent as trial testimony, its use is appropriate only in exceptional circumstances where the moving party has demonstrated through affidavits or otherwise that the witness is unavailable for trial and that the absence of such testimony would result in an injustice.[1] *See United States v. Mills,* 760 F.2d 1116, 1120 (11th Cir.1985); *United States v. Bain,* 736 F.2d 1480, 1485 (11th Cir.), *cert. denied,* 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984); *United States v. Whiting,* 308 F.2d 537, 541 (2d Cir.1962), *cert. denied,* 372 U.S. 919, 83 S.Ct. 734, 9 L.Ed.2d 718 (1963). Foreign deposition testimony, because of the absence of a sanction for perjury, is suspect.

█ Although Alvarez asserts that Mr. Johanes was unavailable to appear at trial due to the expense of traveling from Aruba to Miami, Alvarez does not explain how it would have been less expensive for his lawyer and a court reporter to travel to Aruba to take Mr. Johanes's deposition. The district court did not abuse its discretion in denying Alvarez's motion to introduce the deposition testimony of Johanes at trial. Exceptional circumstances were not shown.

## Prosecutorial Misconduct

Gomez also argues that in closing argument, the prosecutor improperly shifted the burden of proof, thereby prejudicially affecting his substantive rights. *See United States v. Alonso,* 740 F.2d 862, 874 (11th Cir.1984), *cert. denied,* 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985).

In closing arguments, counsel for Gomez, Ramirez, and Mosquero–Herrera all noted the government's failure to check for fingerprints on the plastic in which some of the contraband was wrapped. In his closing argument, the prosecutor responded:

> As to the fingerprints, if they were so certain those fingerprints were going to be great, they could have gotten fingerprint evidence. We didn't present any evidence to you that there weren't fingerprints on it.

█ This comment was preceded by remarks that the government was not attempting to prove that the appellants loaded the drugs onto the vessel. The inference most likely drawn by the jury from the prosecutor's comment was that the absence of appellants' fingerprints from the drug packaging was not crucial to the government's case for possession. Any secondary inference that the appellants had the burden of proving the nonexistence of their fingerprints on the packaging was cured by the district court's instruction that the government bore the burden of proof, its reminder to the jury that statements by counsel should not be considered as evidence, and the fact that the district court sustained appellants' objection to the prosecutor's remarks. Although the district court refused to instruct the jury to ignore the prosecutor's remarks, nevertheless, no prejudice resulted from these remarks.

## Expert Testimony

At trial, the government introduced the expert testimony of a Drug Enforcement Administration (DEA) agent. In response to a hypothetical question, the agent testi-

---

1. Federal Rule of Criminal Procedure 15(a) provides:

   When Taken. Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place. If a witness is detained pursuant to section 3144 of title 18, United States Code, the court on written motion of the witness and upon notice to the parties may direct that the witness' deposition be taken. After the deposition has been subscribed the court may discharge the witness.

fied that it would be more risky to a drug smuggling operation to use crew members who did not have knowledge of the vessel's drug cargo than to use members with knowledge. The agent reasoned that a crew member without knowledge might discover the drug cargo and advise law enforcement authorities.

Mosquero–Herrera contends that the testimony of the DEA agent violated both rule 704(b) and rule 403 of the Federal Rules of Evidence. Rule 403 of the Federal Rules of Evidence states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Rule 704(b) of the Federal Rules of Evidence states:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

At trial, the government had the burden of proving that each of the appellants knew, either actually or constructively, that contraband was on board the vessel. The government sought to create the inference that each of the appellants knew contraband was on board through the following expert testimony of a DEA agent:

> Q. [Prosecutor]: Would there be, again the hypothetical, would there be a down side to having a crew that didn't know that the marijuana and cocaine was on board?
>
> A. [Agent]: Most definitely.
>
> Q. [Prosecutor]: What is that?
>
> A. [Agent]: An unwilling participant or an unknowing participant, in the event he found out what was going on, could do one of a number of things, including notifying the Coast Guard, or upon transfer of the load notifying local authorities at their destination, and up to and including dumping the load.

Since none of the appellants objected to this exchange, our review is limited to the question of whether admission of the evidence was plain error. The issue is whether the admission of the agent's testimony seriously impaired the fairness or integrity of the trial. *United States v. Edwards,* 696 F.2d 1277, 1282 (11th Cir.), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). Perhaps jurors give greater weight to the testimony of an expert because of the court's acceptance of the witness as an expert. When the expert is a government law enforcement agent testifying on behalf of the prosecution about participation in prior and similar cases, the possibility that the jury will give undue weight to the expert's testimony is greatly increased.

■ This court is troubled by the effect which such expert testimony may have on a jury and the possibility for abuse by the prosecution. Where a government law enforcement agent testifies as an expert, on behalf of the prosecution, a serious risk of undue prejudice exists. The risk is particularly great where, as here, no direct evidence indicates the defendant's mental state, i.e., knowledge of drugs being aboard the vessel. The risk of prejudice was mitigated somewhat in this case by the other indirect evidence of knowledge reviewed earlier in this opinion. Nevertheless, the district court would not have abused its discretion had it ruled that the risk of undue prejudice flowing from the agent's testimony substantially outweighed its probative value. This is as much due to the risk of prejudice as to the very low probative value of the testimony. Jurors are probably well aware, without being told by a law enforcement agent, that risks are incurred when criminals involve unwitting participants in drug smuggling. However, even if the admission of the agent's testimony did violate rule 403, in this case, the testimony was not objected to and is reviewable only for plain error. The government presented enough evidence of knowledge that the admission of the agent's testimony did not render the trial fundamentally unfair.

The appellants further contend admission of the testimony violated Federal Rule of

Evidence 704(b). Rule 704(b) applies to an "expert witness testifying with respect to the mental state or condition of a [criminal] defendant...." An expert testifies "with respect to" the mental state or condition of a defendant when an inference of the facts testified to is that the defendant had the mental state or condition constituting an element of the crime. *See United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir.1987). The DEA agent testified that the presence of crew members unaware that the smuggling vessel carried large quantities of drugs would jeopardize the criminal operation. Through this testimony, the prosecution intended that the jury infer that the defendants in this case knew that the vessel carried drugs. Such knowledge was an element of the crime charged. 21 U.S.C. §§ 955a(a) and 955c. Therefore, the DEA agent did testify "with respect to the mental state or condition of a defendant" within the meaning of rule 704(b).

The operative language of 704(b) says that an expert may not *"state* an opinion or inference as to whether the *defendant* did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." This means that the expert cannot expressly state a conclusion that the defendant did or did not have the requisite intent. *Dotson,* 817 F.2d at 1132. In *Dotson,* the government sought to prove the defendant intended to evade income taxes. The government elicited a tax expert's analysis of the defendant's financial records. Through this testimony, the government intended that the jury infer that the defendant intentionally evaded his income taxes. The court held the testimony did not violate rule 704(b) because the testimony did not "directly embrace the ultimate question of whether [the defendant] did in fact intend to evade income taxes." *Dotson,* 817 F.2d at 1132.[2] Expert testimony expressly stating an opinion as to the defendant's state of mind at the

time of the offense is barred by rule 704(b). *United States v. Alexander*, 805 F.2d 1458, 1462 (11th Cir.1986).

 In the instant case, the DEA agent testified that it would be unlikely crew members aboard a vessel carrying a large quantity of contraband would be unaware of its presence. The obvious inference of this is that the defendants in this case were aware of contraband aboard the vessel. Nevertheless, the expert left this inference for the jury to draw. He did not expressly "state [the] inference." Therefore, his testimony did not violate rule 704(b).

Accordingly, we affirm.

AFFIRMED.

---

**2.** *Dotson* also demonstrates that rule 704(b) is not limited in application to cases where the defendant raises an insanity defense. Although subsection (b) was added to the rules of evidence by Congress in conjunction with 18 U.S.C.

§ 17, governing the insanity defense, the plain language of the rule applies to testimony relating to the mental element of any crime or defense.