[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13788
Non-Argument Calendar

_____

D.C. Docket No. 3:13-cr-00034-RV-5


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JARED L. HESTER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 9, 2014)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Jared L. Hester appeals his conviction and sentence of 97 months of

imprisonment for conspiring to possess and distribute pseudoephedrine, knowing

or having reasonable cause to believe, that it would be used to manufacture methamphetamine. See 21 U.S.C. §§ 841(c)(2), 846. Hester challenges a jury instruction, the sufficiency of the evidence to support his conviction, and the calculation of the amount of pseudoephedrine involved in his offense. We affirm Hester's conviction, but because the district court failed to make factual findings to support its decision to attribute to Hester all the pseudoephedrine that he purchased, we vacate Hester's sentence. We remand for the district court to determine the amount of pseudoephedrine that Hester purchased for manufacturing methamphetamine and that he reasonably could have foreseen would be involved in the conspiracy; to use those findings to calculate Hester's base offense level; and to resentence Hester.

The district court did not abuse its discretion when it instructed the jury that it could find Hester guilty of conspiring to knowingly possess or distribute pseudoephedrine if he purchased the substance "knowing, or having reasonable cause to believe," that it would be used to manufacture methamphetamine. That instruction was "lifted from the text of the statute, [which makes] it . . . almost impossible for us to conclude that it did not convey the statute's requirements." United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004). The statute forbids "[a]ny person [from] knowingly or intentionally . . . possess[ing] or distribut[ing] a listed chemical knowing, or having reasonable cause to believe, that the listed

2

chemical will be used to manufacture a controlled substance." 21 U.S.C. § 841(c)(2). Hester argues that use of the phrase "having reasonable cause to believe" in the instruction "alter[ed] the standard of proof . . . and remove[d] the element of knowledge," but the jury was instructed that "reasonable cause to believe" should be evaluated "based on the evidence known to" Hester. See United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) (affirming, on review for plain error, a jury instruction defining "reasonable cause to believe" is "based on the facts known to the defendant"); see also United States v. Munguia, 704 F.3d 596, 602–03 (9th Cir. 2012) (reversing the defendant's conviction when the jury was instructed that "reasonable cause to believe" should be evaluated based on a "hypothetical reasonable person" instead of what the defendant knew). Hester also argues that the district court should have given a generic pattern jury instruction, but "district courts do not have to use . . . pattern jury instructions for they are not precedent and cannot solely foreclose the construction of the necessary elements of a crime as stated in the statute," United States v. Dean, 487 F.3d 840, 852 (11th Cir. 2007) (internal quotation marks and citation omitted). The jury instruction was an accurate statement of the law. "In order to find . . . [Hester] guilty . . . with violating the statute, the jury . . . needed to find either that he knew the pseudoephedrine would be used to manufacture methamphetamine or that he had reasonable cause to believe that it would be." See Prather, 205 F.3d at 1270.

3

Hester argues that he did not know the pseudoephedrine would be used to manufacture methamphetamine, but ample evidence supports the contrary finding of the jury.  See 21 U.S.C. § 841(c)(2).  Three of Hester's coconspirators testified that he traveled with them to purchase pseudoephedrine; he gave them or another coconspirator pseudoephedrine on several occasions in exchange for cash or methamphetamine; and he smoked methamphetamine inside the residence where it was manufactured.  And the government introduced certified records from seven pharmacies showing that Hester purchased, or attempted to purchase, pseudoephedrine 40 times within two years; on 16 occasions, he and his coconspirators purchased pseudoephedrine on the same day; and 6 of those 16 transactions occurred within 11 minutes of each other.  See United States v. Alvarez, 837 F.2d 1024, 1027 (11th Cir. 1988) ("Evidence of surrounding circumstances can prove knowledge.").  Although Hester testified that he never purchased pseudoephedrine for manufacturing methamphetamine, the jury was entitled to disbelieve Hester, believe the other witnesses, and consider Hester's testimony as substantive evidence of his guilt.  See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

The government argues that Hester invited any error in the calculation of the quantity of pseudoephedrine involved in his offense, but we disagree.  Hester moved the district court to depart downward from a base offense level of 30

4

because it had miscalculated the amount of pseudoephedrine that he purchased for manufacturing methamphetamine, but the district court overruled Hester's motion. Although the district court departed downward by three levels, it did so on the ground that "the pseudoephedrine levels are overstated" in the Sentencing Guidelines. Hester's argument that he purchased some pseudoephedrine for lawful use did not invite or induce the district court to reduce his base offense level. See United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009).

The district court clearly erred in adopting the amount of pseudoephedrine attributed to Hester in his presentence investigation report. That report provided a base offense level of 30 based on 92.1 grams of pseudoephedrine contained in 41 boxes of medications that Hester purchased between December 23, 2010, and April 16, 2013, see United States Sentencing Guidelines Manual § 2D1.11(d)(5) (Nov. 2012), but the report overstated the amount of pseudoephedrine attributable to Hester. The conspiracy began on January 1, 2011, and between that day and April 16, 2013, Hester bought only 40 boxes containing 90.66 grams of pseudoephedrine. Although the report miscalculated the amount of pseudoephedrine, that error was harmless because it did not change Hester's base offense level. See id. § 2D1.11(d)(5); United States v. Foley, 508 F.3d 627, 634 (11th Cir. 2007). Even so, the preponderance of the evidence does not establish that Hester purchased 90.66 grams of pseudoephedrine for purposes of

5

manufacturing methamphetamine. See United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). The district court found that Hester purchased "some" of the pseudoephedrine "for legitimate reasons."

The district court also failed to make any factual findings to support its decision to hold Hester responsible for 90.66 grams of pseudoephedrine. "[A] member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that [he] agreed to undertake and that are reasonably foreseeable in connection with that activity." United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993). To make that determination, "the district court . . . first [had to] make individualized findings concerning the scope of [Hester's] criminal activity," see id. (citing U.S.S.G. § 1B1.3 cmt. n.2), but it failed to do so. As a result, the district court could not "determine the drug quantities reasonably foreseeable in connection with [Hester's] level of participation." See id. The district court stated that it was using the amount of pseudoephedrine that Hester purchased as "a way of trying to approximate on a relative scale of things [his] culpability," but "sentencing cannot be based on calculations of drug quantities that are merely speculative," United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998). We cannot determine why the district court decided that all of Hester's purchases represented the amount of pseudoephedrine that he reasonably could have foreseen in connection with his level of participation in the conspiracy.

Accordingly, we vacate Hester's sentence, and we remand for the district court to make findings about what amount of pseudoephedrine Hester bought for purposes of manufacturing methamphetamine and what amount of pseudoephedrine was reasonably foreseeable to Hester in connection with his role in the conspiracy; to use those findings to calculate Hester's base offense level; and to resentence Hester.

We **AFFIRM** Hester's conviction, but we **VACATE** Hester's sentence and **REMAND** for the district court to resentence Hester.