[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15583
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20153-RNS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE PABLO ORTIZ-SANTIZO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 15, 2019)


Before MARCUS, ROSENBAUM, and EDMONSON, Circuit Judges.

PER CURIAM:

Juan Ortiz-Santizo appeals his convictions for (1) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; (2) distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and (3) possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  Ortiz-Santizo also appeals his total 151-month sentence for his offenses.  No reversible error has been shown; we affirm.

Briefly stated, this appeal arises from these facts.  In December 2016 and January 2017, the Broward County Drug Task Force used a confidential informant ("CI") to arrange two controlled drug buys from Ortiz-Santizo.  During the first controlled drug buy, the CI purchased 82.9 grams of methamphetamine from Ortiz-Santizo.  During the second controlled drug buy -- at Ortiz-Santizo's direction -- the CI purchased 54.22 grams of methamphetamine from Ortiz-Santizo's brother.

Ortiz-Santizo was later arrested on 16 February 2017, after his car broke down and was blocking traffic on the highway.  When Sergeant Berthet approached the car, he smelled marijuana and noticed that Ortiz-Santizo appeared nervous and was hugging a backpack.  Shortly thereafter, a second officer arrived

2

on the scene with a narcotics-detecting dog, who alerted on the interior of the car and on the backpack. The officers conducted a warrantless search of the car and seized 111.6 grams of methamphetamine and 11.5 grams of marijuana from the backpack.

## I.

On appeal, Ortiz-Santizo contends that the district court erred in denying his motion to suppress evidence seized during the warrantless search of his car. Ortiz-Santizo argues that -- because his car was disabled at the time of the search -- the automobile exception is inapplicable.

We review the district court's denial of "a motion to suppress evidence under a mixed standard of review, reviewing the court's findings of fact for clear error and the application of law to those facts de novo." United States v. Pierre, 825 F.3d 1183, 1191 (11th Cir. 2016). We will construe the facts in the light most favorable to the party who prevailed below. United States v. Nixon, 918 F.2d 895, 902 (11th Cir. 1990). In considering a ruling on a motion to suppress, we may consider the evidence presented at the suppression hearing as well as evidence

3

presented at trial.  United States v. Villabona-Garnica, 63 F.3d 1051, 1056 (11th Cir. 1995).

Under the automobile exception to the Fourth Amendment's warrant requirement, police may perform a warrantless search of a car if probable cause exists to believe the car contains contraband or evidence of criminal activity. California v. Acevedo, 500 U.S. 565, 569 (1991).  For the exception to apply, there must be both probable cause and exigent circumstances necessitating a search or seizure.  Nixon, 918 F.2d at 903.  We have said, however, that "the requirement of exigent circumstances is satisfied by the 'ready mobility' inherent in all automobiles that reasonably appear to be capable of functioning."  Id. (emphasis in original).  "The vehicle does not have to be moving at the moment when the police obtain probable cause to search."  United States v. Alexander, 835 F.2d 1406, 1409 (11th Cir. 1988).

The district court committed no error in denying Ortiz-Santizo's motion to suppress the drugs found during the warrantless search of his car.  Sergeant Berthet testified that when he first approached Ortiz-Santizo's car, he detected the odor of marijuana and observed that Ortiz-Santizo appeared nervous.  Later, a narcotics-detecting dog alerted to the interior of the car and then, to the backpack that Ortiz-Santizo had been holding.  Based on the totality of the circumstances, there existed

4

a fair probability contraband would be found in Ortiz-Santizo's car.  Probable cause existed to search both the car and the backpack.  See United States v. Tamari, 454 F.3d 1259, 1264-65 ("We have long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'").

Exigent circumstances also justified the warrantless search.  Although Ortiz-Santizo's car was non-operational at the time of the search, it was reasonable to believe that the car could soon become mobile.  The car was stopped in the middle of the highway, evidencing that it had been operational moments before.  Ortiz-Santizo also commented that he had just had the car repaired and the officer noticed that the car had a brand-new battery.  Besides, Ortiz-Santizo had already arranged to have the car towed before the officers arrived on the scene; the car was about to become movable.  Under these circumstances, it was reasonable to conclude that Ortiz-Santizo's car was readily mobile and, thus, that a warrantless search was justified under the automobile exception.  See Nixon, 918 F.2d at 903.

II.

Ortiz-Santizo next challenges the district court's denial of his motions for a judgment of acquittal.  "We review de novo a district court's denial of judgment of

5

acquittal on sufficiency of evidence grounds." United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013).  In determining the sufficiency of the evidence, "we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor."  Id. We cannot overturn a jury's verdict unless no "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  Id.

## A.

About his conspiracy conviction, Ortiz-Santizo contends the evidence produced at trial was insufficient to demonstrate the existence of an agreement between Ortiz and another party.

To obtain a conviction for conspiracy to distribute a controlled substance under 21 U.S.C. § 846, the government must prove, in pertinent part, that a conspiracy or agreement existed between the defendant and others.  United States v. Holt, 777 F.3d 1234, 1259 (11th Cir. 2015).  "The existence of a conspiracy may be demonstrated by circumstantial evidence such as inferences from the conduct of

6

the defendant or circumstances indicating a scheme or plan." United States v. Bascaro, 742 F.2d 1335, 1359 (11th Cir. 1984).

Viewed in the light most favorable to the government, the evidence presented at trial was sufficient to permit a reasonable factfinder to conclude beyond a reasonable doubt that Ortiz-Santizo conspired with others to possess with intent to distribute a controlled substance. First, officers observed Ortiz-Santizo obtain methamphetamine from a man named Guevara during a controlled buy between Ortiz-Santizo and the CI. The government also introduced an email Ortiz-Santizo sent after his arrest, in which he demanded that his brother convince Guevara to clear his name and threatened to expose Guevara and Guevara's family's involvement in the conspiracy. This evidence supported a finding that an ongoing agreement existed between Ortiz-Santizo and Guevara, who was known to the officers as a methamphetamine distributor.

Evidence also supported a finding that an agreement existed between Ortiz-Santizo and his brother. Because Ortiz-Santizo was out of town when the CI contacted him about the second controlled buy, Ortiz-Santizo arranged for his brother to complete the sale while Ortiz-Santizo helped facilitate the transaction.

We acknowledge that a mere buyer-seller relationship or an agreement with a CI -- by itself -- is insufficient to establish a conspiracy. See United States v.

7

Wright, 63 F.3d 1067, 1072 (11th Cir. 1995) (explaining that "it takes at least two to conspire neither of which may be government agents or informers."); Bascaro, 742 F.2d at 1359 ("the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement."). The evidence produced at trial, however, was sufficient to support a finding that Ortiz-Santizo had an agreement with Guevara and with his brother to sell drugs to third persons. That the two controlled drug buys involved sales to a CI did not frustrate the existence of that conspiracy.

Laboratory results also confirmed that the quantity of methamphetamine involved in each of the controlled buys satisfied the 50-gram threshold; thus, each of the controlled buys would support the conspiracy charged in the indictment.

B.

About Ortiz-Santizo's conviction for possession with intent to distribute, he contends that insufficient evidence existed to establish that he knew about the drugs found in his backpack.

To sustain a conviction for possession with intent to distribute methamphetamine, the government must establish three elements: knowledge,

8

possession, and intent to distribute.  United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir. 1999).  All three elements may be proven by circumstantial evidence. United States v. Poole, 878 F.2d 1389, 1391-92 (11th Cir. 1989).

Sufficient evidence existed from which a reasonable jury could conclude that Ortiz-Santizo possessed with intent to distribute 50 grams or more of methamphetamine.  Ortiz-Santizo admitted that the backpack belonged to him. Sergeant Berthet also testified that, when he first observed Ortiz-Santizo, Ortiz-Santizo appeared nervous and was clutching the backpack in front of him.  Based on this evidence, a jury could infer reasonably that Ortiz-Santizo knew the methamphetamine was in his backpack.  Moreover, because the drugs were found inside Ortiz-Santizo's backpack and inside Ortiz-Santizo's car, the jury could also infer reasonably that Ortiz-Santizo had constructive possession over the drugs.  See United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005) ("Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion of control over the premises or the vehicle in which the object is concealed.").  Although Ortiz-Santizo testified that the drugs "weren't supposed to be there" and did not belong to him, the jury was free to reject that testimony and to infer that the opposite was true.  See United States v. Hasner, 340

9

F.3d 1261, 1272 (11th Cir. 2003) ("A proper inference the jury can make from disbelieved testimony is that the opposite of the testimony is true.").

## III.

Ortiz-Santizo next contends that the district court abused its discretion in permitting the government to impeach him on cross-examination with a suppressed prior statement.

Before trial, Ortiz-Santizo moved to suppress a statement he made to police after his arrest, in which he admitted he had purchased two ounces of methamphetamine the night before.  The government conceded the statement was inadmissible during the government's case-in-chief because the statement was obtained after Ortiz-Santizo invoked his Miranda[*] rights.  Accordingly, the district court granted the motion to suppress but reserved ruling on whether the statement could be introduced for impeachment purposes.

We review for an abuse of discretion the district court's decision to allow the introduction of suppressed evidence for purposes of impeachment.  United States v. Quesada-Rosadal, 685 F.2d 1281, 1283 (11th Cir. 1982).  A "defendant's

---

[*] Miranda v. Arizona, 384 U.S. 436 (1966).

statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government," including by suppressed evidence inadmissible in the government's case-in-chief.  United States v. Havens, 446 U.S. 620, 627-28 (1980).

The district court abused no discretion in allowing the government to impeach Ortiz-Santizo on cross-examination with his suppressed statement.  On direct examination, Ortiz-Santizo testified that he was no drug dealer, had never sold methamphetamine before the controlled buys, and was merely a drug addict who was coerced into acquiring methamphetamine by the CI, who was also his romantic partner.  On cross-examination, the government -- staying within the scope of Ortiz-Santizo's direct examination -- questioned Ortiz-Santizo about his relationship with the CI, about the quantity of drugs he sold to the CI, about his text messages with the CI arranging drug sales, and about his association with Guevara.

The government also questioned Ortiz-Santizo about conduct pertinent to the credibility of his direct testimony, including that he was later arrested with nearly four ounces of methamphetamine in his backpack.  When Ortiz-Santizo denied knowledge and possession of those drugs, he opened the door for the government

11

to rebut that testimony, including with Ortiz-Santizo's suppressed statement that he had purchased two ounces of methamphetamine at Guevara's house the night before his arrest. On this record, the district court abused no discretion in allowing the introduction of the suppressed statement to impeach Ortiz-Santizo's credibility.

IV.

Ortiz-Santizo next challenges the district court's decision permitting the government's expert witness to testify that the quantity of drugs seized from Ortiz-Santizo was consistent with the distribution of methamphetamine.

We review the district court's rulings on the admissibility of expert testimony under an abuse-of-discretion standard. United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc). Under this standard, we will not reverse unless the district court's ruling was "manifestly erroneous." Id. We must affirm unless the district court made a clear error of judgment or applied the incorrect legal standard. See id. at 1259.

An expert witness in a criminal case may not state expressly a conclusion about the defendant's mental state at the time of the offense. United States v. Alvarez, 837 F.2d 1024, 1031 (11th Cir. 1988) (interpreting Fed. R. Evid. 704(b)).

This rule does not, however, preclude expert testimony that would support an inference about the defendant's mental state, provided that the testimony leaves it to the jury to draw the inference.  See id.

The district court abused no discretion in allowing Officer Passman to testify that -- based on his experience investigating methamphetamine cases -- the quantity of methamphetamine seized from Ortiz-Santizo's car (111.6 grams) was consistent with distribution, not personal use.  Officer Passman testified that, on average, the amount of methamphetamine sold for personal use is between 0.5 and 1 gram, and no more than 3.5 grams.  Based on his experience, a quantity of 3 or 4 ounces of methamphetamine would be consistent with distribution.  Officer Passman expressed no opinion about Ortiz-Santizo's state of mind in this case.  Because the jury was left to decide the ultimate issue of whether Ortiz-Santizo had the requisite intent to distribute the methamphetamine seized from his car, the testimony was permissible under Rule 704(b).  See id.

V.

Ortiz-Santizo challenges his 151-month sentence.  He contends that the district court erred in calculating the drug quantity attributable to him and, thus in

13

enhancing his base offense level from 32 to 36.  We need not address this argument, however, because the district court said expressly that it would impose the same sentence regardless of whether Ortiz-Santizo's base offense level was 32 or 36.  See United States v. Barner, 572 F.3d 1239, 1247-48 (11th Cir. 2009) ("Where a district judge clearly states that he would impose the same sentence, even if he erred in calculating the guidelines, then any error in the calculation is harmless.").

AFFIRMED.

14