[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10560
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-20518-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUGENE HILTON RUSSELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 31, 2020)

Before WILLIAM PRYOR, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

In November 2018, a jury found Eugene Russell guilty of importation of five

or more kilograms of cocaine, in violation of 21 U.S.C. § 952(a), and possession

with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1).  Russell raises two issues on appeal.  First, he argues that the district court abused its discretion by allowing Noble Harrison to testify as an expert at trial.  Second, he argues that the evidence presented at trial was insufficient to prove that he knowingly possessed the cocaine that was found on his boat.  After careful review, we affirm.

## I.

In June 2018, a federal grand jury charged Russell with importation of five kilograms or more of cocaine, 21 U.S.C. § 952(a), and possession with intent to distribute five kilograms or more of cocaine, 21 U.S.C. § 841(a)(1).

At trial, the government called Felipe Ortiz Cintron, a Customs and Border Protection ("CBP") agent.  Agent Ortiz Cintron testified that, on June 2, 2018, he was on an aerial border security patrol near Bimini, Bahamas, when he spotted a cuddy cabin boat stopped dead in the water.  As Agent Ortiz Cintron watched, another boat approached from the east and met the cuddy cabin boat.  Agent Ortiz Cintron considered this unusual, so his patrol plane approached to get a clearer view.  Agent Ortiz Cintron observed that each boat was occupied by one person and the second boat appeared to be fueling the cuddy cabin boat.  When the vessels separated, the cuddy cabin boat headed west towards the United States and the other boat headed east.

2

Russell was the driver and sole occupant of the cuddy cabin boat. CBP continued to track Russell's boat as it made its way from Bimini towards Florida. Once the boat entered U.S. territorial waters near Miami Beach, two CBP boats approached to conduct a border inspection. The CBP vessels were clearly marked and the officers on board were wearing law enforcement uniforms. As the CBP vessels approached Russell's boat, they turned on their blue lights. Russell changed course and briefly attempted to evade the CBP vessels before stopping.

Agents searched the boat. On board was a cooler containing fish that were frozen together, as though they had been "frozen in a freezer . . . not caught and then put on ice on a hot, sunny day." Agents also found a fishing rod, but it "wasn't equipped with fishing tackle or a hook of any kind." Other than the fishing rod, there was no other indication that the boat was a fishing vessel. Agents inspected the cooler and noticed that it smelled strongly of epoxy or glue and had "horizonal cuts," which "did not look like they were supposed to be there." Upon further examination, they discovered approximately 12 kilograms of cocaine hidden in the lining of the cooler, with a street value between $264,000 and $360,000.

Over Russell's objection, the district court permitted the government to call Harrison, a special agent with the Drug Enforcement Administration ("DEA"), as an expert witness. Agent Harrison had worked as a DEA special agent for

approximately 24 years, where he acquired extensive experience in drug investigations "from the street level to international . . . drug trafficking." He testified that drugs from South America are typically shipped to the Caribbean, where they are broken down into smaller shipments and sent to the United States in smaller vessels. He said that it is common for drug-trafficking organizations to arrange for ship-to-ship transfers of drugs, after which the vessel receiving the drugs will often take them to a final destination point or transfer them to another vessel. These drugs are normally concealed to avoid detection, including in coolers or inside dead fish.

Agent Harrison also testified that drug smugglers are often held responsible for anything that happens to the drugs in their possession. In Agent Harrison's opinion, "unwitting drug smugglers" who do not know they are transporting drugs are "extremely rare." Agent Harrison testified that he had seen unwitting smugglers perhaps once or twice in his career in law enforcement, but he had not personally seen a case in which a smuggler gave $300,000 of cocaine to someone without first alerting them that they had that amount of contraband in their possession.

The parties stipulated at trial that Russell had been convicted on August 28, 2008, of conspiracy to import 100 kilograms or more of marijuana, importation of 100 kilograms or more of marijuana, and possession with intent to distribute 100

4

kilograms or more of marijuana. They further stipulated that Russell transported that marijuana by boat from the vicinity of Bimini, Bahamas, to South Florida.

Following closing arguments, the district court instructed the jury that it was not required to accept Agent Harrison's testimony and that the jurors must "decide for [themselves] whether to rely upon that opinion." After deliberating, the jury returned a verdict of guilty on both counts. The district court sentenced Russell to 300 months of imprisonment as to both counts, to run concurrently. Russell timely appealed.

## II.

We review a district court's decision regarding the admissibility of expert testimony and the reliability of an expert opinion for abuse of discretion. United States v. Holt, 777 F.3d 1234, 1264 (11th Cir. 2015). We review the sufficiency of evidence de novo, considering the evidence in the light most favorable to the verdict and drawing all inferences and credibility choices in its favor. See United States v. Capers, 708 F.3d 1286, 1296–97 (11th Cir. 2013).

## III.

Russell argues that the district court abused its discretion by allowing Agent Harrison to testify as an expert at trial. He claims that Agent Harrison's testimony violated Federal Rule of Evidence 704(b) by stating an opinion as to whether Russell had the requisite knowledge of the cocaine secreted in the cooler on his

boat.  He also argues the district court "never conducted the requisite inquiry to ensure that the basis for the proffered expertise was sound and properly applicable to the facts of the case."  These arguments are without merit.

Rule 704(b) bars an expert witness from stating an opinion about whether the defendant "did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b); United States v. Alvarez, 837 F.2d 1024, 1030–31 (11th Cir. 1988).  But this rule "does not require the exclusion of expert testimony that supports an obvious inference with respect to the defendant's state of mind" so long as the witness does not expressly state this inference and allows the jury to draw its own conclusions from the testimony.  United States v. Augustin, 661 F.3d 1105, 1123 (11th Cir. 2011) (per curiam); see also United States v. Steed, 548 F.3d 961, 977 (11th Cir. 2008) (per curiam).

Agent Harrison's testimony did not violate Rule 704(b).  Harrison testified that drug trafficking organizations typically hold the person who has actual or constructive possession of narcotics responsible for their loss; that unwitting drug smugglers are "extremely rare;" and that he had personally never seen a case in which a smuggler gave someone $300,000 worth of cocaine without informing them in advance what it was.  In Alvarez, this Court held that expert testimony from a DEA agent that "it would be unlikely crew members aboard a vessel

6

carrying a large quantity of contraband would be unaware of its presence" still left the jury to draw the inference as to whether the individual defendants were actually aware of the presence of the contraband and so did not violate Rule 704(b). 837 F.2d at 1031. Similarly, Harrison provided information about the typical conduct of drug smugglers that allowed, but did not require, the jury to draw the inference that Russell was himself aware of the contraband aboard his vessel. This testimony did not amount to an express statement as to Russell's own state of mind at the time of the offense and so did not violate Rule 704(b). See United States v. Lozano, 711 F. App'x 934, 940 (11th Cir. 2017) (per curiam) (unpublished) (holding that expert testimony that the "blind mule theory" has no factual basis did not violate Rule 704(b) where the witness did not specifically state that the defendant had knowledge of the drugs or was willfully blind to their presence).

Russell waived his argument that the district court failed to engage in the required inquiry in deciding whether to allow Agent Harrison's testimony. As such, we review the admission of this testimony for plain error. United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007). This requires a showing that the error was "so conspicuous that the judge and prosecutor were derelict in countenancing it" and that harm resulted. Id. (quotation marks omitted).

In deciding whether to admit expert testimony, trial courts must consider whether (1) the expert is qualified to testify competently regarding the matters he

intends to address; (2) the method by which he reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact in understanding the evidence or determining a fact in issue. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quotation marks omitted). Even if the district court did not adequately weigh these questions at trial, the error was harmless. On appeal, Russell does not challenge Agent Harrison's qualifications, the reliability of the bases for his conclusions, or whether his testimony assisted the jury. Rather, he argues only that the testimony violated Rule 704(b). As already discussed, it does not. And the record reflects that Agent Harrison was qualified as an expert in the operations of drug trafficking organizations. The record also leaves us with no reason to doubt the reliability of his conclusions or that his testimony assisted the jury. We therefore find no plain error resulted from the district court's inquiry into Agent Harrison's expert testimony.

## IV.

Russell argues that the government failed to prove beyond a reasonable doubt that he knowingly possessed the cocaine hidden in the lining of the cooler on his boat. He argues that the government's evidence showing knowledge of the cocaine was purely circumstantial and required speculation.

We consider the evidence underlying a conviction to be sufficient if a reasonable trier of fact, drawing all inferences in favor of the verdict, could

determine that the evidence established the defendant's guilt beyond a reasonable doubt. United States v. Jiminez, 564 F.3d 1280, 1284–85 (11th Cir. 2009). To sustain a conviction for importation of a controlled substance under 21 U.S.C. § 952(a), the government must prove beyond a reasonable doubt that the defendant had knowledge that he was importing a controlled substance. See United States v. Peart, 888 F.2d 101, 104 & n.2 (11th Cir. 1989) (per curiam). To sustain a conviction for possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that the defendant knowingly possessed a controlled substance and intended to distribute it. See United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989) (per curiam). This can be proven by either direct or circumstantial evidence. Poole, 878 F.2d at 1391–92. Factors tending to show knowing possession of drugs include the "size of the vessel and quantity of drugs on board; suspicious behavior of the crew; absence of equipment or supplies necessary to the intended use of the vessels; and other factors." Alvarez, 837 F.2d at 1028.

A reasonable jury, drawing all inferences in favor of the government, could find that the circumstantial evidence presented at trial was sufficient to prove beyond a reasonable doubt that Russell had knowledge of the cocaine in the cooler. Russell was observed in a brief rendezvous with another vessel in an area known for drug trafficking. After their meeting, the boats headed in opposite directions,

9

with Russell piloting his boat towards Florida.  On board his boat was a fishing rod with no hooks and frozen fish, which a reasonable jury could infer were intended to serve as a cover for illegal activity.  And hidden in the cooler was cocaine with a street value of between $264,000 and $360,000.  Based on the expert testimony of Agent Harrison, a reasonable jury could conclude that it was unlikely that a drug smuggling operation would place such a large quantity of cocaine on the vessel without Russell's knowledge.  And a reasonable jury could also have concluded that Russell's prior convictions for importing over 100 kilograms of marijuana by boat from Bimini to Florida strongly undercut any argument that the presence of the cocaine was accidental or coincidental.  See Fed. R. Evid. 404(b)(2) (stating that evidence of past offenses is admissible to show "plan, knowledge, . . . absence of mistake, or lack of accident.").  Taken together, this circumstantial evidence was sufficient for a reasonable jury to conclude that the government proved beyond a reasonable doubt that Russell had knowledge of the cocaine in his possession.

**AFFIRMED.**